UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:11-cv-672-FDW
(3:09-cr-75-FDW-1)

| | |
|---|---|
| KIRK ST. PATRICK HENRY, )<br>)<br>Petitioner, )<br>)<br>)<br>vs. )<br>)<br>UNITED STATES OF AMERICA, )<br>)<br>Respondent. )<br>_____ ) | **ORDER** |

**THIS MATTER** is before the Court on Petitioner's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255, (Doc. No. 1), on the Government's Motion to Dismiss the Motion to Vacate, (Doc. No. 9).

**I.    BACKGROUND**

1. Offense Conduct

Petitioner entered the United States through New York, New York, on June 28, 1980, as an immigrant. (Doc. No. 11 at ¶ 2: PSR). In August 1997, Petitioner was convicted in this Court of conspiracy to possess with intent to distribute cocaine and cocaine base. (Id. at ¶ 3). After serving a 63-month prison sentence, Petitioner was removed from the United States as an aggravated felon to his birthplace, Jamaica. (Id.). Petitioner was physically removed to Jamaica on February 6, 2002. (Id.).

When Petitioner was deported he was advised that he could not enter, attempt to enter, or be found in the United States without the Attorney General's express consent. (Id. at ¶ 4). Seven

1

years later, on March 19, 2009, Charlotte Mecklenburg Police Department officers arrested Petitioner on charges of possession of heroin, misdemeanor possession of marijuana, and providing fictitious information to an officer. (Id. at ¶ 1). While Petitioner was detained in the Mecklenburg County Jail, authorities discovered that he was in the United States in violation of the Immigration and Nationality Act. (Id.).

2. Indictment and Guilty Plea

On April 21, 2009, Petitioner was charged in a Bill of Indictment with illegal re-entry by an aggravated felon, in violation of 8 U.S.C. § 1326(a)-(b)(2). (Id., No. 1: Bill of Indictment). One year later, on April 14, 2010, Petitioner entered a straight-up plea of guilty to the offense. (Id., Doc. No. 10: Acceptance and Entry of Guilty Plea). At the Rule 11 hearing, Petitioner acknowledged that he was under oath, understood the maximum penalties he faced for each count of conviction, understood how the sentencing guidelines may apply to his case, acknowledged that no one had made him promises of leniency or a light sentence to induce his guilty plea, had sufficient time to discuss possible defenses with his attorney, and was satisfied with the services of his attorney. (Id., Doc. No. 10 at 1-4). At the conclusion of the hearing, based on Petitioner's responses, the magistrate judge found Petitioner's plea to be knowingly and voluntarily made. (Id. at 5).

3. Sentencing and Appeal

Following entry of Petitioner's guilty plea, a probation officer prepared a draft pre-sentence report ("PSR"), stating Petitioner's base offense level was 8 and recommending a 16-level enhancement for the prior federal drug conviction, bringing the offense level to 24. (Id., Doc. No. 13 at ¶¶ 11-16). The probation officer also recommended a three-level reduction for acceptance of responsibility. (Id. at ¶¶ 18-19). As part of the PSR, the probation officer

2

summarized Petitioner's criminal history and recommended that it be category III. (Id. at ¶¶ 20-28). Petitioner objected to one aspect of the PSR, the assignment of two criminal points for the conviction of possession of drug paraphernalia. (Id. at 10).

The Court convened the sentencing hearing on May 9, 2011. The Court granted Petitioner's objection to the addition of two criminal points allotted for the drug paraphernalia conviction. (Id., Doc. No. 17 at 4: Statement of Reasons). With the Court's rulings, the Court found Petitioner faced a total offense level of 21 with a criminal history category of II, yielding an advisory range of 41 to 51 months. (Id.). The Court ultimately sentenced Petitioner to a term of 41 months of imprisonment, and three years of supervised release, entering judgment on May 23, 2011. (Id., Doc. No. 16: Judgment). Petitioner did not appeal.

    4.   Section 2255 Allegations

Petitioner placed his Section 2255 motion in the prison mailing system on December 27, 2011, and the motion was stamp-filed in this Court on December 29, 2011.[1] Petitioner brings two grounds for relief. First, he alleges that the Government was unreasonable and acted in bad faith in delaying his federal prosecution so that he did not serve his state and federal sentences concurrently. (Doc. No. 1 at 3). That is, Petitioner claims that the Government acted in bad faith by waiting until Petitioner served his state sentence before his first appearance was made on the federal indictment. (Id. at 6). Second, Petitioner claims that he was entitled to a downward departure on cultural assimilation grounds. (Id.).

**II.    STANDARD OF REVIEW**

---

[1] The Court notes that although Petitioner was released from prison on December 10, 2012, he is still serving three years of supervised release. Therefore, he is still "in custody" for purposes of this Section 2255 motion. United States v. Pregent, 190 F.3d 279, 283 (4th Cir. 1999).

3

Pursuant to Rule 4(b) of the Rules Governing Section 2255 Proceedings, sentencing courts are directed to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings" in order to determine whether a petitioner is entitled to any relief. If a petitioner's motion survives initial review and once the Government files a Response, the Court must then review the materials submitted by the parties to determine whether an evidentiary hearing is warranted under Rule 8(a) of the Rules Governing Section 2255 Proceedings. After having considered the record in this matter, the Court finds that this matter can be resolved without an evidentiary hearing. See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

### III. DISCUSSION

A. Ground One: Unreasonable/Bad Faith Delay of Prosecution

In Petitioner's first claim for relief, he argues that he should be given nine months of credit on his federal sentence for the missed opportunity to serve concurrent state and federal sentences because of "delay" in the Government's prosecution. (Doc. No. 1 at 3). This claim is without merit. First, a non-constitutional error does not provide a basis for collateral attack unless it involves "a fundamental defect which inherently results in a complete miscarriage of justice." United States v. Mikalajunas, 186 F.3d 490, 495 (4th Cir. 1999). Section 2255 provides relief for cases in which "the sentence was in excess of the maximum authorized by law." Pregent, 190 F.3d at 284 (quoting § 2255(a)). Petitioner received a sentence at the applicable guideline range and well within the statutory maximum for this offense. This sentence, then is not a "complete miscarriage of justice" entitling Petitioner to relief under Section 2255.

Furthermore, Petitioner procedurally defaulted his first claim by failing to raise it on direct appeal. As a general rule, a claim of error that was not raised on direct appeal is procedurally

defaulted and is not cognizable on collateral review because "[h]abeas review is an extraordinary remedy and will not be allowed to do service for an appeal." Bousley v. United States, 523 U.S. 614, 621 (1998) (internal quotations and citations omitted); see also United States v. Pettiford, 612 F.3d 270, 279 n.7 (4th Cir. 2010). Where a defendant has procedurally defaulted a claim by failing to raise it on direct appeal, the claim is cognizable in habeas "only if the defendant can first demonstrate either 'cause' and actual 'prejudice' . . . or that he is 'actually innocent.'" Bousley, 523 U.S. at 622 (citations omitted).

In order to show "cause" for a procedural default, the defendant must demonstrate that some objective factor external to the record impeded his counsel's efforts to bring a claim on direct appeal. Murray v. Carrier, 477 U.S. 478, 497 (1986); Turner v. Jabe, 58 F.3d 924, 927 (4th Cir. 1995). It is not enough that counsel failed to present an argument that was unlikely to succeed; rather, cause only exists based on counsel's failure to present the claim if the claim "'is so novel that its legal basis is not reasonably available to counsel.'" Bousley, 523 U.S. at 622 (quoting Reed v. Ross, 468 U.S. 1, 16 (1984)). There was no such bar here.

In attempting to avoid a procedural default based on the "actual innocence" exception to the default, a defendant must show, by clear and convincing evidence, Mikalajunas, 186 F.3d at 494, that it is more likely than not that no reasonable juror would have convicted him because of his "factual innocence, not mere legal insufficiency," Bousley, 523 U.S. at 623. Petitioner's guilty plea and the facts set forth in the pre-sentence report foreclose this exception to procedural default. In sum, because he cannot demonstrate cause or actual innocence, Petitioner has procedurally defaulted his first claim.

The Court further finds that even if Petitioner could show a miscarriage of justice or overcome procedural default, there is no evidence that the Government acted in bad faith, or that

the Petitioner's prosecution took longer than a reasonable amount of time for the Government to have diligently investigated the crime involved.  See United States v. Los Santos, 283 F.3d 422, 428 (2d Cir. 2002).  The fact that the Government's timing was "fortuitous" is not enough on its own to show "deliberate manipulation or bad faith."  Los Santos, 283 F.3d at 428-29.  Although courts have held that "departure is warranted if a harsher sentence is imposed because of the 'fortuity of delay,'" United States v. Sanchez-Rodriguez, 161 F.3d 556, 564 (9th Cir. 1998), Petitioner has provided no evidence that would indicate the sentence given to him was "harsher" because of any incidental delay or that the Government intentionally delayed his appearance in federal court.  As noted, Petitioner was actually given a sentence on the low end of the advisory range.  Petitioner's conclusory allegation, without any specific evidence, that the government acted in bad faith is insufficient to warrant Section 2255 relief.  Therefore, Petitioner's first claim fails.

       B. Ground Two: Cultural Assimilation Downward Departure

In Petitioner's second claim for relief, he argues that he should have been given a downward departure for his cultural assimilation in the United States.  (Doc. No. 1 at 6).  As the Court has already discussed, "[b]arring extraordinary circumstances . . . an error in the application of the Sentencing Guidelines cannot be raised in a § 2255 proceeding."  Pregent, 190 F.3d at 283-84.  A non-constitutional error does not provide a basis for collateral attack unless it involves "a fundamental defect which inherently results in a complete miscarriage of justice."  Mikalajunas, 186 F.3d at 495.  Here, Petitioner has not shown that the Court's denial of a downward departure, even if error, was anything more than an ordinary misapplication of the guidelines.  Therefore, Petitioner has not shown a "complete miscarriage of justice" and his second claim fails.  Moreover, as with Petitioner's first claim, Petitioner has also procedurally

defaulted his second claim by failing to raise it on direct appeal, and he cannot demonstrate cause or actual innocence to overcome the procedural default.

Finally, the requested departure was not appropriate in this case. A departure may be appropriate when "there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines." See U.S.S.G. § 5K2.0. The defendant bears the burden to prove by a preponderance of the evidence that the circumstances of his or her case warrant a downward departure. United States v. Lipman, 133 F.3d 726, 730 (9th Cir. 1998). Cultural assimilation is a factor that is not mentioned in the Guidelines, so a sentencing court can only depart on this basis after considering whether the facts of the instant case are sufficient to fall outside of the heartland cases, i.e., a set of typical cases embodying the conduct described in the guidelines. See id. Whether a defendant's family and community ties are sufficiently "unusual" or "extraordinary" to warrant departure in a particular case is a factual determination that lies within the discretion of the district court. Id.

In Lipman, the Ninth Circuit held that the district court had the authority to grant a downward departure based on cultural assimilation, but the court also found that the defendant had not met the burden required to show that his case was so "unusual" or "extraordinary" to receive a downward departure. Id. at 732. Like the defendant in Lipman, Petitioner has not met his burden of showing that his family ties to the United States are unusual or extraordinary, as would be required for eligibility of that departure. Therefore, Petitioner's second claim for relief fails.

IV.    CONCLUSION

For the reasons stated herein, the Court will dismiss the Section 2255 petition and grant the Government's motion to dismiss.

**IT IS, THEREFORE, ORDERED** that:

1. Petitioner's Section 2255 motion to vacate, (Doc. No. 1), is **DENIED** and **DISMISSED**. To this extent, the Government's Motion to Dismiss, (Doc. No. 9), is **GRANTED**.

2. Pursuant to Rule 11(a) of the Rules Governing Section 2255 Cases, this Court declines to issue a certificate of appealability as Petitioner has not made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); Miller–El v. Cockrell, 537 U.S. 322, 336-38 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong).

Signed: August 24, 2013

Frank D. Whitney
Chief United States District Judge